Ilsley, J.
The plaintiff sues to recover from the defendant tne sum of three thousand four hundred and eighty dollars, the proceeds of sale of twenty-nine shares of the stock of the New Orleans Railroad Company, sold, by the defendant, as the plaintiff’s agent, and which proceeds he retains and refuses to pay over.
The answer is a general denial. The sale of the plaintiff’s stock is admitted; but, it was made, as the defendant avers, in order to secure his rights and claims against the plaintiff for services rendered as his agent, computed by defendant to be worth four thousand and five dollars, ox five per cent, upon the amount of sales made in the plaintiff’s two simps, superintended by him, the defendant, as clerk, invested with the plaintiff’s power of attorney, from the 1st September, 1862, to the 4th March, 1805.
The facts disclosed by the testimony are the receipt and detention by the defendant, of the proceeds of the stock, which the defendant also *231 admits; that on the 30th of August, 1859, the defendant and Charles Testard, two of the old clerks of the plaintiff, then and now a resident of Paris, in Prance, were constituted by him as his agents, jointly or separately, to transact his commercial business in New Orleans, which they undertook and transacted without any compensation or remuneration beyond the fixed salaries, which each of them received as clerks.
Sometime in the year 1862, the plaintiff, in order.,to facilitate his money transactions between New Orleans and Paris, proposed the agency to a house in New Orleans, who declined it; when, on the 18th January, 1863, the plaintiff executed a procuration in the name of the defendant, having a short time previously revoked the power to Mr. Testard. Under this procuration to the defendant, which conferred on him some additional' powers, authorizing him to transfer all sorts of stocks, obligations, claims, etc., he continued to act until he was superseded by H. Damien, also a •Jerk in the plaintiff’s employment.
The reconventional demand, which includes the plea of compensation per tmde, is for the services rendered by the defendant, as the plaintiff’s' sole mandatary, from the 1st September, 1862, the time at which Testard’s power was revoked, until the 4th of March, 1865, when H. Damien was appointed in his stead.
The principles of law by which such cases as this are governed, are well and definitely established by our jurisprudence.
The correct doctrine, we hold to be that taught in Decour’s Heirs v. Plantagues, 10 La. 508; Elkin’s Heirs v. Elkin’s Executors, 11 La. 226, and Succession of John Rex, 14 An. 317, and Maunsel White v. C. Jones, ib. 681; it is “ that amandate is gratuitous, unless there has been a contrary stipulation; this need not be expressed but may be implied,” and compensation for services shall not be allowed when it does not appear to have been in the contemplation of either party that a charge was to be made.'
In the case of the Navigation Company v. Collens, 12 A., p. 120, the rule laid down in our Code in Article 2960, as expounded by this Court, is fully recognized, but the Court observes, “although the language of the law is comprehensive, and almost positive in its terms, many cases have been recognized in our jurisprudence as constituting exceptions to the rule, such, for instance, as those in which the mandatary’s services are rendered in the course of an employment or profession where it is customary to make charges for such services. Thus, lawyers, brokers, commission ■ merchants, land agents, etc., though mandataries, are not presumed, even in the absence of any specific agreement for compensation, to render their services gratuitously. Also, where (as in the Succession of Fowler, - 12 A. 211) there is an understanding between the parties that the services of the mandatary shall be remunerated, he might recover the value of his - services.” If, as the Court properly observes, “the Article of the Code is' to be so construed as to have any practical application, it is evident that a mandatary seeking compensation for services rendered in his capacity as such, must bring his claim within the scope of some exception to the general rule that the contract is gratuitous, and must show that his demand is made under circumstances from which it must be inferred that compensation for his services was in contemplation of both parties at the time the mandate was conferred. To recapitulate, he must show—
*232 1. That there is a special agreement, or that it was in contemplation of both parties, at the time the mandate is conferred on him, that a charge is to'be made.
2. That the services rendered by, and for which remuneration is claimed by a mandatary, are in the course of an employment or profession, where it is customary to make charges for-such services. .
3. That the relations of the principal and agent are such as to justify the conclusion that there is an understanding between them, that the services will be remunerated.
We are satisfied from a perusal of the testimony in this case, that when the defendant was constituted the sole agent of the plaintiff, neither the one nor the other contemplated a charge for the services to be rendered by the former, who had just previously performed nearly the same services gratuitously, and who, it does not appear during his agency, in his accounts or on the books under his control, had ever made any charge whatever, except his regular salary of seventy dollars a month, and his board, at forty dollars per month. This is significant; besides, had he expected a recompense when assuming the sole agency, is it not a reasonable supposition that he would have notified or given some intimation to his principal, that he could not accept the mandate gratuitously, as he had previously done, but would require some recompense beyond his fixed salary, to perform the duties which would devolve on him, and was not his silence enough to impress his principal with the belief that the agency would be, as it had theretofore been, gratuitous?
If the defendant relied upon a custom that clerks, holding powers of attorney for their employers, who reside abroad, are to be remunerated for the services rendered by them, as agents, beyond their fixed salaries, and without special agreements, it devolved upon him, the case being exceptional, to show it, which he has failed to do.
Pardessus, vol. 2, Nos. 531, 533, speaking of the class of persons to which the defendant belongs, says: “Léspére de services que rendent ces personnes exige qu’elles soient dans certains cas depositaires de la cohfiance de leur patron, et considérés comme ses mandataires. Un commis en louant ses services est censé les avoir promis dans tout leur étendne, il ne pourrait agir pour son compte qu’en negligeant le travail qui lui est confié.” See Troplong Mandat, No. 236; G-ouyot and Mayor, Droit Commercial, vol. 2, p ; Encylopédie du Droit, vol. 4, p. 590.
The language used by the Court, in the matter of the Fowler Succession, 7 A. 209, expresses clearly what was deemed by it such an understanding in regard to services rendered by an agent, as to entitle him to remuneration therefor.
“ We do firmly,” say the the Court, “ believe from their relations and the evidence, that the one intended and the other expected ihat, if their relations terminated, a very liberal reward would be made for those services. ”
■ The evidence in the case before us, has convinced us that no such implied contract can be inferred, either from the nature of the employment or the relation of the parties, between whom no such intention and expectation were ever formed or entertained.
We need’not consider the questions, whether the services rendered by *233 the agent were troublesome, or what the plaintiff’s losses were during the agency, all we have to determine is, whether the defendant has brought his-case within the rule of law, or of some recognized or valid, legal exception thereto, which entitles him to relief, and this we think he has failed to do.
It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.